COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued by Teleconference


GREGORY SCOTT ADDISON
                                        MEMORANDUM OPINION* BY
v.         Record No. 2234-96-3    CHIEF JUDGE NORMAN K. MOON
                                           SEPTEMBER 9, 1997
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF WISE COUNTY
                        Ford C. Quillen, Judge

            Anthony E. Collins (Collins & Collins, on
            brief), for appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.



      Gregory Scott Addison appeals his convictions of first

degree murder, stalking, and use of a firearm in the commission

of a murder. Addison asserts that the trial court erred in: (1)

finding him competent to stand trial; (2) denying his motion for

a competency hearing after he allegedly experienced visual

hallucinations during trial; (3) denying his proposed jury

instruction concerning the law of manslaughter; (4) denying his

motion for a mistrial on the basis that his undisclosed

statements, allegedly elicited during custodial interrogation,

were introduced by the Commonwealth's witnesses; and (5) allowing

introduction of his alleged "jailhouse confession" where

Addison's statements to a fellow inmate were not provided to the

_____

      *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

defense pursuant to the trial court's discovery order.

We hold that: (1) it is within the discretion of the finder of fact to determine the weight to be accorded expert witnesses' testimony and that the trial court's finding that Addison was competent to stand trial was supported by credible evidence and was not plainly wrong; (2) the evidence was sufficient to support the trial court's finding that probable cause did not exist to order an additional competency evaluation; (3) the trial court did not err in refusing Addison's proposed instructions concerning involuntary manslaughter because the proposed instruction was not supported by the evidence; (4) the trial court did not err in denying Addison's motion for a mistrial on the basis that his statements to the police were erroneously admitted because there was no manifest probability that the denial was prejudicial; and (5) because Addison's statements in jail were not written nor made to a law enforcement officer, they were not contemplated by the court's discovery order and therefore did not have to be disclosed.  Accordingly, we affirm.

On August 15, 1995, Addison approached his wife, Janet Addison, in the middle of the street in front of the City of Norton Post Office and shot her twice with a .38 caliber handgun, killing her.

On January 5, 1996, a discovery order was entered requiring the Commonwealth to make available to Addison, for inspection or copying, "[a]ny written or recorded statements or confessions made by [Addison] or the substance of any oral statements or

confessions made by [Addison] to any law enforcement officer, the existence of which is known to the Attorney for the Commonwealth."  On February 16, 1996, the trial court granted Addison's motions that the court suppress any statements made by Addison to any police officer after he was taken into custody, that the court order an evaluation of Addison's competency to stand trial, and that the court compel the Commonwealth to provide witness statements.

On February 17, 1996, a competency hearing was conducted during which Drs. Pierce Nelson and Robert Granacher, Jr. testified for Addison.  Nelson, a psychiatrist who treated Addison from November 1980 to June 1995, testified that Addison's behavior indicated a serious psychotic episode.  Nelson recommended Addison be admitted to a psychiatric hospital for treatment and observation of Addison's alleged psychotic delusions.  Granacher, a psychiatrist certified in general psychiatry, geriatric psychiatry, and forensic psychiatry, tested Addison prior to trial and reviewed his current medical and psychiatric records, school records, blood and urine samples, work product, medication, and videos of the crime scene, the police interrogation, and Addison in jail and at the hospital. Granacher also reviewed the competency report prepared by the Commonwealth's expert, Dr. Thomas Schact, and concluded that Schact's report lacked a sufficient database upon which to draw any conclusion regarding Addison's competency.

Granacher then testified that Addison is "psychotic . . .

severely mentally ill . . . suffers a delusional disorder . . . [and] is dangerous."  Granacher also opined that Addison would be unable to assist his counsel in pursuing a defense because "[a]ny factual information an attorney attempts to get from Mr. Addison in an effort to defend him is a product of a sick mind, product of a delusion.  It's erroneous information."

Testifying on behalf of the Commonwealth, Schact stated that Addison's responses suggested the possibility of some significant impairment to Addison's competency.  Schact also agreed with Granacher that Addison suffered from delusions regarding his wife and her fidelity, but concluded that Addison was intentionally fabricating responses to some of the tests administered by Schact.  Schact testified that Addison understood the charges against him, the behavior expected of him in the courtroom, who his attorney was, and his attorney's role in the proceedings.  Schact also stated, however, that Addison had refused to discuss either the nature of the proceedings against him or whether he appreciated his legal options and their consequences.

Based on this evidence, the trial court ruled that in accordance with Code § 19.2-169.1(E), Addison had proved by a preponderance of the evidence that he was incompetent to stand trial.  Accordingly, the court ordered that Addison be admitted to a state psychiatric hospital for treatment and observation. Addison was subsequently confined to Central State Hospital.

On March 30, 1996, a second competency hearing was conducted

at which Dr. Miller Ryans, a psychiatrist at Central State Hospital, was the only expert to testify. Miller testified that Addison was kept under twenty-four hour observation and was subjected to a variety of tests during the twenty-six day period. Based on the tests and observations, Ryans concluded that Addison suffered "from major recurrent severe depression" and "from residuals of delusional disorder-jealousy type." Ryans further opined, however, that despite these dysfunctions, it was his opinion that Addison had the "present capacity to plead and assist his attorney in his defense." Ryans testified that none of his testing or observation had confirmed the audible and visual hallucinations alleged by Addison. Ryans opined that the alleged hallucinations were the result of "malingering" and that the hallucinations in fact served other purposes of Addison.

On cross-examination, Ryans conceded that he was uncertain whether Addison could assist counsel if Addison became delusional during the trial when his wife's fidelity was addressed. Ryans also noted that Addison had "handicaps" in going to trial. Ryans stated that although Central State had the capacity to do testing of the type performed by Drs. Schact and Granacher, such testing had not been conducted. Ryans agreed that those tests might reveal attributes of Addison affecting competency that mere consultation with Addison would not reveal. Further, Ryans testified that Addison had trouble concentrating and remembering and conceded that Addison might suffer from conversion amnesia or shock which could have caused Addison to forget the killing.

- 5 -

Ryans explained that Addison's delusions were "triggered" by addressing the subject of his wife's fidelity. Ryans opined that although Addison understood the operation of the court, he could have difficulty when his wife's fidelity was addressed. He explained, "I believe as attorneys you all have to try to transpose, he's aware of, he knows how the Courts work. And the, [sic] and it'll be up to you all with some, some great deal of effort to try to get him to apply to his own case." Ryans also admitted that the charge and the indictment intricately involved the subject which triggered the delusions and that should Addison's delusions be triggered, he could become incapable of assisting in his defense.

At the conclusion of the hearing, the trial court found Addison competent to stand trial. On April 1, 1996, the trial began, at which time Addison's counsel motioned that the trial not go forward because Addison was incompetent. Addison's counsel argued that an unconstitutional burden was being placed upon his zealous representation of Addison because he was being required to assume the role of a psychologist or psychiatrist in order to "transpose" the case for Addison as suggested by Dr. Ryans. Counsel's motion was denied, and the trial proceeded.

On April 2, during the testimony of Addison's sixteen-year-old son, Addison reported to his counsel that he saw his son winking and gesturing to members of the audience. Addison also said he saw the Commonwealth's Attorney doing the same and that he believed the judge was winking at the

- 6 -

Commonwealth's Attorney. The Commonwealth's Attorney advised the court that he noticed Addison staring at him and making movements toward him. Upon the conclusion of Addison's son's testimony, Addison's counsel motioned for reevaluation of his competence. The court refused to suspend the proceedings at that time but, at counsel's request, ordered that Dr. Ryans reexamine Addison at the close of the day's testimony.

On April 3, Ryans testified regarding his examination of Addison the previous evening. Addressing Addison's alleged hallucinations, Ryans stated that his opinion regarding Addison's ability to assist in his defense remained unchanged. Ryans also testified that "it's my opinion that the key word here is volitional. If [Addison] chooses I believe that he can restrain his hostility here in order to get through the legal process." Based on Dr. Ryans' testimony and the court's own observations that "[Addison] was alert, cognizant of the testimony and was participating in with his counsel in his defense," the court denied counsel's motion for a new competency evaluation.

Trial proceeded and Trooper C.D. Willis, who was present during Addison's arrest, testified that while being taken into custody, Addison made an unsolicited statement that he caught his wife "screwing around" and that he had shot her. Willis also testified that Addison said, "I'm crazy." Willis, however, did not include a reference to the "crazy" statement in his written report of the incident, which was provided to Addison's counsel. During cross-examination, Willis stated that prior to Addison's

- 7 -

comment, an officer asked Addison why he shot his wife.  Willis testified that Addison's statement was made after he had been handcuffed and while he was lying on the ground amidst several police officers.

Addison's counsel then motioned for a mistrial, arguing that he had been led to believe that the statement made by Addison had been spontaneous, when in fact it was the product of an unlawful custodial interrogation.  The Commonwealth's Attorney confirmed that he too had been led to believe that Addison's statement was unsolicited.  The court ordered the jury to disregard Willis' testimony and denied Addison's counsel's motion for a mistrial.

Trooper Jackie Baldridge also testified that when arrested, Addison said, "I'm fucking crazy, and I got the papers to prove it."  Baldridge testified that Addison's statement was made in response to an unidentified person's inquiry of "why."  Addison's counsel also objected to this testimony.  The court allowed it, finding that it was a spontaneous statement.

The next day, James Childs, who had shared a cell in the Wise County jail with Addison, testified that Addison explained that he shot his wife because she had been cheating on him and that he had attempted suicide three times before deciding to kill his wife.  Childs also testified that Addison said that he was going to try to plead insanity and that he thought he had a "good case" because of his medication and suicide attempts.  Addison also told Childs that he "blacked out" and could not remember most of the shooting.

Addison's counsel objected to this testimony and motioned for a mistrial, arguing that the Commonwealth violated the court's discovery order because it failed to disclose exculpatory evidence. The Commonwealth's Attorney learned of the jailhouse conversation several months earlier through a letter from Childs' attorney. Addison's counsel argued that because the Commonwealth had been given a written statement of Childs' account of his conversation with Addison and the statement had not been provided to Addison's counsel, the content of the conversation should be inadmissible. Counsel's motion was denied.

At the close of trial, Addison proposed several jury instructions, including one concerning manslaughter: "The difference between murder and manslaughter is malice. When malice is present, the killing is murder. When it is absent the killing can be no more than manslaughter." This jury instruction was rejected by the court and was subsequently proffered by counsel.

### Competency

Contrary to Addison's assertion on brief, at a hearing to determine competency to stand trial "the party alleging that the defendant is incompetent shall bear the burden of proving by a preponderance of the evidence the defendant's incompetency." Code § 19.2-169.1(E). "[T]he standard for competence to stand trial is whether the defendant has `sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has `a rational as well as factual

- 9 -

understanding of the proceedings against him.'" Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)). Further, "[a] trial court's determination of a defendant's competency to stand trial is a question of fact." Delp v. Commonwealth, 172 Va. 564, 570-71, 200 S.E. 594, 596 (1939). "A factual finding made by the trial court is binding on appeal unless plainly wrong." Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

At the March 30, 1996 hearing, Dr. Ryans testified regarding his testing and treatment of Addison during his twenty-six day commitment at Central State Hospital. Ryans opined that Addison was suffering from a major recurrent severe depression and a residual delusional disorder but that he had the present capacity to assist in his defense. No evidence was found of a physical defect interfering with Addison's ability to understand the trial process. Regarding Addison's alleged hallucinations, Ryans concluded that he was "malingering" and his alleged hallucinations in fact served some other purpose of Addison's.

It was within the trial court's discretion to accept or reject any of Ryans' testimony and to determine what weight it should be accorded. Street v. Street, 25 Va. App. ____, ____, ____ S.E.2d ____, _____ (1997) (en banc); Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). Ryans' testimony provided the trial court with credible evidence which supported its determination that on March 30, 1996, Addison was competent to stand trial. Holding that the trial court's

– 10 –

decision was not plainly wrong and was supported by credible evidence, we will not disturb its decision on appeal.

Addison's additional contention that the trial court erred in denying him a new competency evaluation after his alleged hallucinations is without merit.  Code § 19.2-169.1(A) provides:

> If, at any time after the attorney for the defendant has been retained or appointed and before the end of trial, the court finds, upon hearing evidence or representations of counsel for the defendant or the attorney for the Commonwealth, that <u>there is probable cause to believe</u> that the defendant lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense the court shall order that a competency evaluation be performed . . . .

(Emphasis added).  Here, the record supports the trial court's finding that there was no probable cause warranting an additional competency evaluation.  After counsel proffered that Addison was experiencing visual hallucinations, the trial court ordered that Dr. Ryans examine Addison.  After questioning Addison, Dr. Ryans testified that his opinion about Addison's ability to assist in his defense had not changed.  In addition, the trial court observed that Addison appeared alert during trial and cognizant of the proceedings and remained an active participant in his defense by conferring with his attorney.  On the basis of these observations and Dr. Ryans' testimony, the court denied counsel's motion for a new competency evaluation.  This evidence was sufficient to preclude a finding that probable cause existed to believe that Addison was incompetent or had become incompetent

- 11 -

since his original competency hearing.

We also note that Addison's claims that he could not remember the shooting and that he blacked out are insufficient evidence to establish as a matter of law that Addison was incompetent to stand trial. To the contrary, Code § 19.2-169.1(E) specifically provides that "[t]he fact that the defendant claims to be unable to remember the time period surrounding the alleged offense shall not, by itself, bar a finding of competency if the defendant otherwise understands the charges against him and can assist in his defense."

Jury Instructions

Addison argues that the trial court erred in refusing to give his proposed instruction regarding voluntary manslaughter. "A reviewing court's responsibility in reviewing jury instructions is `to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "`[T]he appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to'" Addison. Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564-65 (1993) (quoting Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992)).

So viewed, the Commonwealth's evidence proved that on the afternoon of August 15, 1995, Addison shot his wife twice,

killing her.  Before the killing, Addison told several people that he believed his wife was having affairs with three or four of her male co-workers.  While incarcerated awaiting trial, Addison told Childs that he had decided to kill his wife as an alternative to killing himself.  Addison also told Childs that he had followed his wife all day on August 15 and that he had planned to kill her elsewhere, but that when he saw her on the street he "lost his head and went ahead and killed her."  Addison himself testified that he believed his wife had been having affairs since January 1995.

"To reduce homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation."  Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986).  There was no evidence that Addison killed his wife in the heat of passion and upon reasonable provocation.  In fact, the evidence demonstrated that Addison planned to kill his wife for what he believed were her long standing infidelities.  Addison's own testimony that he "lost his head" when he killed his wife in front of the post office instead of in another location does not in any way ameliorate the fact that Addison planned to murder his wife on the day in question.  Because Addison's proposed manslaughter instruction was unsupported by the evidence, it was properly refused.  Bennett v. Commonwealth, 8 Va. App. 228, 234, 380 S.E.2d 17, 21 (1989).  Accordingly, the trial court did not err in refusing to instruct the jury on voluntary manslaughter.

Addison argues that the trial court erred in failing to grant his motion for a mistrial on the basis that his undisclosed statements to Trooper Willis, which Addison alleges were the product of custodial interrogation, were erroneously admitted. "On appeal the denial of a motion for a mistrial will not be overruled unless there exists a manifest probability that the denial of a mistrial was prejudicial." Harward v. Commonwealth, 5 Va. App. 468, 478, 364 S.E.2d 511, 516 (1988).

Here, the trial court struck Willis' testimony concerning Addison's statements at the scene of the killing and ordered the jury to disregard that testimony. In the absence of evidence to the contrary, we presume that the jury followed the judge's instruction to disregard the allegedly objectionable testimony. Howard v. Commonwealth, 6 Va. App. 132, 144, 367 S.E.2d 527, 534 (1988). The record contains no evidence that the jury did not abide by the judge's instruction. We find no error in the trial court's failure to grant a mistrial on this basis.

Addison further contends that the discovery provided by the Commonwealth erroneously described Addison's comment to Willis as a spontaneous statement when in fact it was the product of custodial interrogation. The discovery order governing the case required the Commonwealth to disclose Addison's oral statements to police officers, but did not require the Commonwealth to describe the particular circumstances surrounding the statements. Thus, assuming arguendo that the Commonwealth did

- 14 -

mischaracterize the statement to Willis as a spontaneous statement, no violation of the discovery order occurred. Again, we find no error in the trial court's failure to grant a mistrial on this basis.

Addison also objected to Trooper Baldridge's testimony that, immediately after the killing, Addison said, "I'm fucking crazy and I've got the papers to prove it." Baldridge testified that Addison made this statement spontaneously while he was lying on the sidewalk surrounded by police officers. The comment was not connected to the questions previously posed by the officers.

"'<u>Miranda</u> [<u>v. Arizona</u>, 384 U.S. 436 (1966),] safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.'" <u>Jenkins v. Commonwealth</u>, 244 Va. 445, 453, 423 S.E.2d 360, 365 (1992) (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980)), <u>cert. denied</u>, 507 U.S. 1036 (1993). Where a suspect in custody makes spontaneous admissions which are not a product of police interrogation, the statements are not inadmissible as violative of the suspect's <u>Miranda</u> rights. <u>See</u> <u>Bradshaw v. Commonwealth</u>, 228 Va. 484, 490, 323 S.E.2d 567, 570-71 (1984). Therefore, the trial court did not err in refusing to suppress Baldridge's testimony about Addison's comment at the scene or in failing to grant a mistrial on this basis.

### Jailhouse Statements

Addison objected to Childs' testimony because the Commonwealth's Attorney did not disclose before trial either

- 15 -

Childs' letter to his attorney concerning his jail cell encounter with Addison or Childs' attorney's letter to the Commonwealth's Attorney concerning the matter.

The discovery order required the Commonwealth to make available to Addison "[a]ny written or recorded statements or confessions made by the Defendant or the substance of any oral statements or confessions made by the Defendant to any law enforcement officer, the existence to [sic] which is known to" the Commonwealth's Attorney.  Neither letter constituted a written or recorded statement of Addison.  "To be discoverable the statement must be given by the accused rather than by a witness who heard the accused speak."  Hackman v. Commonwealth, 220 Va. 710, 714, 261 S.E.2d 555, 558 (1980) (decided under former Rule 3A:14).  Nor were the letters oral statements made by Addison to a law enforcement officer.  Consequently, the Commonwealth's Attorney's failure to disclose the two letters did not violate the discovery order, and therefore we hold that the trial court did not err in admitting evidence of Addison's conversation with Childs.

Holding that the trial court's finding that Addison was competent to stand trial was supported by credible evidence and was not plainly wrong; that the evidence was sufficient to support the trial court's finding that probable cause did not exist to order an additional competency evaluation; that Addison's proposed instruction concerning involuntary manslaughter was unsupported by the evidence; that the trial

court did not err in denying Addison's motion for a mistrial on the basis that his statements to the police were erroneously admitted; and that Addison's jailhouse statements were not contemplated by the trial court's discovery order, we affirm.

<u>Affirmed.</u>