COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Agee and Senior Judge Overton
Argued at Alexandria, Virginia


KATHLEEN DALE (KERVIN) DIAMOND

v.   Record No. 1321-01-4

BARRY ROGER DIAMOND                    MEMORANDUM OPINION* BY
                                       JUDGE JERE M. H. WILLIS, JR.
BARRY ROGER DIAMOND                         MARCH 19, 2002

v.   Record No. 1327-01-4

KATHLEEN DALE (KERVIN) DIAMOND


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     M. Langhorne Keith, Judge

          Gregory L. Murphy (Paul W. Mengel, III;
          Vorys, Sater, Seymour and Pease, LLP, on
          briefs), for Kathleen Dale (Kervin) Diamond.

          Glenn C. Lewis (Robert C. Eustice;
          Catherine M. Reese; The Lewis Law Firm, P.C.,
          on briefs), for Barry Roger Diamond.


     Kathleen Diamond contends that the trial court erred:  (1) in

awarding her only $20,000 in attorney's fees and costs; and (2) in

denying her motion to reconsider the amount of attorney's fees

awarded to her.

     Barry Diamond contends on cross-appeal that the trial court:

(1) abused its discretion by awarding Ms. Diamond ninety percent

_____

         * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

of the value of Language Learning Enterprises, Inc. ("LLE"); (2) erred in assigning a total value of $232,000 to LLE; (3) erred in assigning a value of $206,000 to Ms. Diamond's interest in LLE; and (4) abused its discretion in awarding Ms. Diamond $20,000 in attorney's fees.

We consolidate the issues on appeal and consider the following questions:  (1) whether the trial court erred in determining the value of LLE and Ms. Diamond's interest in it; (2) whether the trial court erred in awarding ninety percent of LLE's value to Ms. Diamond and ten percent to Mr. Diamond; and (3) whether the trial court erred in awarding $20,000 in attorney's fees to Ms. Diamond and rejecting her motion for reconsideration.  We find no error and affirm the judgment of the trial court.

## I.  BACKGROUND

In late 1999, after thirty-one years of marriage, Kathleen Diamond sued for divorce.  In her bill of complaint, she sought among other things, a divorce, equitable distribution of the parties' marital property, and attorney's fees.  Barry Diamond filed a cross-bill, seeking, among other things, a divorce, valuation of the marital business, and equitable distribution of the marital property.

Prior to equitable distribution of the marital property, the parties engaged in extensive negotiation, attempting to

-

resolve the property distribution.  Those negotiations failed.

An <u>ore</u> <u>tenus</u> hearing was held on February 6-8, 2001.

### A.  <u>MR. DIAMOND'S CONTRIBUTIONS TO LLE</u>

At trial, Mr. Diamond testified that in 1979, with his full personal and financial support, Ms. Diamond started LLE, a foreign language training, translating, and interpreting service.  Mr. Diamond stated that during its formative years, he supported LLE financially in a number of ways.  He provided the majority of the family income from 1979-1987.  He agreed to use $21,000 in marital funds for Ms. Diamond to purchase shares of LLE common and preferred stock so that she could maintain control of the company.  He agreed that Ms. Diamond could run the business out of the marital home for its first six years, when it could not afford to pay rent.  He encouraged Ms. Diamond to pledge the marital home as collateral to secure a contract with the state of Maryland.

Mr. Diamond further testified that Ms. Diamond relied on him, in his professional capacity as an attorney, to serve as LLE's corporate counsel and business advisor.  He testified that as such, he charged nothing, or at most, half price for extensive legal and business services.  Approximately three-quarters of his services were uncompensated.

Ms. Diamond contradicted Mr. Diamond's testimony.  She testified that over a twenty-year period, Mr. Diamond spent no more than 300 hours performing work for LLE.  She testified that

-

most of Mr. Diamond's legal work was duplicative, using the same document over and over again.  She stated she did not request on behalf of LLE that Mr. Diamond do much of the work that he did, nor did she want to put him on retainer.  She did not want Mr. Diamond to insinuate himself into her business.  She testified that as a result, in the early 1990's, she and Mr. Diamond decided that his law practice was Mr. Diamond's, and LLE was hers.

### B.  VALUATION OF LLE

LLE was incorporated in 1991.  At the time of trial, there were two classes of stock, preferred and common.  Ms. Diamond owned one hundred percent of the common (voting) stock, which allowed her total control over LLE, and twenty out of one hundred seventeen shares of preferred stock.

In October 1994, a certified public accountant calculated LLE's value at $487,000.  In June 1999, on a Century National Bank individual financial statement, Ms. Diamond valued the company at $300,000.  In June 2000, Ms. Diamond valued the company at $308,000 on another Century National Bank individual financial statement.  Finally, in December 2000, the Small Business Administration guaranteed a $428,000 loan to LLE from Century National Bank, for which the business and its assets served as primary collateral.

-

## 1. MR. DIAMOND'S EXPERT: A. JACKSON EARLY

A. Jackson Early applied the intrinsic value standard to value LLE and Ms. Diamond's interest in it. He considered that a combination of the specific tangible assets method and the discounted future earnings method best captured LLE's intrinsic value. He calculated LLE's net tangible assets to be worth $232,000, but because the company was a service business with strong earnings potential and other intangible assets, he opined that the net tangible asset value alone did not accurately represent LLE's intrinsic value.

Assigning equal weight to values derived from specific intangible assets, tangible assets, and the discounted future cash flow, Mr. Early calculated the company value to be between $410,000 and $450,000. After deducting the value of LLE preferred shares, he calculated the total value of Ms. Diamond's common and preferred stock in a range between $385,000 to $425,000.

## 2. MS. DIAMOND'S EXPERT: BRUCE G. DUBINSKY

Bruce G. Dubinsky based his valuation of LLE on its fair market value. He suggested that in this case the fair market value was essentially the same as intrinsic value. He noted that intrinsic value is a subjective concept that considers the worth of the property to the parties. To determine this value, he looked to the historical results of operation, such as the company's history of generating losses and its debts.

-

Although the company had been in business for twenty years and had received a $428,000 Small Business Association guaranteed loan, Mr. Dubinsky opined that he saw "very little future current benefits [being] derived out of this business." He determined the total value of LLE to be $100,000. Furthermore, because preferred shareholders were entitled to be repaid before common stockholders for their initial investments upon liquidation of LLE, Mr. Dubinsky calculated Ms. Diamond's common stock value to be zero and her preferred stock value to be de minimus.

### C.   AWARD OF ATTORNEY'S FEES

Ms. Diamond sought an award of $62,000 in attorney's fees, costs, and expert witness fees.  She contended that she had made Mr. Diamond several settlement offers that were more than favorable compared to what he received at trial.  Therefore, she argued, she was entitled to the award.

Mr. Diamond, on the other hand, asserted that, based on all the information available to him during pretrial negotiations, his settlement position was reasonable.  Consequently, he argued, attorney's fees, costs, and expert witness fees should not be awarded.

### D.   THE TRIAL COURT JUDGMENT

The April 17, 2001 final decree of divorce awarded equitable distribution.  The court ruled that Ms. Diamond should receive fifty-five percent and Mr. Diamond receive forty-five

-

percent of all the marital assets except LLE, the largest marital asset.

The trial court determined $232,000 to be the value of LLE and $206,000 to be the value of the marital interest therein. It awarded ninety percent of the marital interest ($185,400) to Ms. Diamond and ten percent ($20,600) to Mr. Diamond. The trial court based this ruling on Ms. Diamond's guarantee of LLE's debt and on a variety of other factors, including the statutory factors.

The trial court further ordered, without comment, Mr. Diamond to pay $20,000 to Ms. Diamond for attorney's fees and costs. Ms. Diamond filed a motion to reconsider the amount of the award. That motion was denied.

## II. ANALYSIS

A factual finding by the trial court will not be disturbed on appeal unless it is plainly wrong or unsupported by the evidence. Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

### A. VALUATION OF LLE AND MS. DIAMOND'S INTEREST

We first consider whether the trial court erred in determining the value of LLE and Ms. Diamond's interest in it. We find that it did not. "The trial court has discretion to resolve conflicting expert testimony to determine an asset's value." Howell v. Howell, 31 Va. App. 332, 341, 523 S.E.2d 514, 519 (2000). The testimony of the parties and expert witnesses

-

was in conflict.  Mr. Early fixed the total value of LLE at $450,000 while Mr. Dubinsky arrived at a total value of $100,000.

The trial court determined the total value of LLE to be $232,000 and $206,000 to be the value of the marital interest. This valuation was within the range of values as established and comported with the suggested valuation methodology.  We find no error in the trial court's determination of value.

### B.  DISTRIBUTION OF LLE

We next consider whether the trial court erred in awarding Ms. Diamond ninety percent and Mr. Diamond ten percent of LLE's martial value.  We hold that it did not.

Mr. Diamond testified that he provided monetary and non-monetary support in creating and developing LLE.  He described several contributions, such as agreeing to use $21,000 in marital funds for Ms. Diamond to purchase LLE preferred stock and providing legal advice free or at a discounted rate.  He argues that those contributions require an award greater than ten percent.  We disagree.

While Mr. Diamond made some limited contributions to the creation and development of LLE, the evidence was abundantly clear that most of the creative and developmental efforts and the overwhelming majority of the effective contributions came from Ms. Diamond.  We cannot say, on the record before us, that

-

the trial court's allocation of LLE's value between the parties was plainly wrong or without evidence to support it.

C.   AWARD OF ATTORNEY'S FEES AND MOTION FOR RECONSIDERATION

Finally, we consider whether the trial court erred in awarding Ms. Diamond $20,000 in attorney's fees and rejecting her motion for reconsideration.  The record reflects no challenge to the reasonableness of the fees charged her.  "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion."  Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999).  We find no abuse of discretion.

This case involved prolonged and fruitless efforts at settlement followed by complex litigation before the trial court.  The trial court had before it the merits of the parties' pretrial positions and their relative financial capabilities.  Based on that information, it determined that attorney's fees were warranted in the amount of $20,000.  This determination fell within the trial court's exercise of its sound discretion. We perceive no abuse of that discretion.

The judgment of the trial court is affirmed.

Affirmed.

-