# Staunton

## England James v. Commonwealth of Virginia

September 10, 1941.

Record No. 2443.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Carter & Williams, Mary H. Williams* and *Waldo G. Miles,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

Hudgins, J., delivered the opinion of the court.

The case is before this court on a writ of error to three final judgments, whereby England James, the accused, was convicted of aiding and abetting the commission of the offense of ''hit and run'' on three separate indictments, and sentenced to be confined in the penitentiary for the term of one year for each offense.

The accused contends that the evidence is insufficient to convict him of any crime charged.

On April 27, 1940, England James invited Bertha May Smith to take a drive in his automobile. The accused, with her as his guest, drove to several places in Pittsylvania county and in North Carolina. Both of them drank wine and beer rather freely and frequently. About eight o'clock that night the accused permitted Bertha May Smith to drive while he sat to her right on the front

seat. As she approached the city of Danville, the car struck and killed three pedestrians—Melvin Carter, Ernest Canady and Delbert Cope. Bertha May Smith, without stopping at the scene of the accident, drove the automobile to her home in Danville. There she got out of the car; the accused took the wheel and drove to his home in another part of the city. He parked the car at the back of his house, went to bed and there remained until after 10:00 p. m. He then arose, went to police headquarters and inquired about a wreck. When questioned by the police officer, he denied that he knew anything about an accident and even denied that he owned an automobile. A police officer was sent to the home of the accused, where he found an automobile that showed physical evidence of having been in a collision. When accused was confronted with these facts, he gave an account of the accident and admitted that he was in the car at the time.

An aider and abettor is defined by Mr. Chief Justice Campbell in *Stone* v. *Commonwealth*, 176 Va. 570, 11 S. E. (2d) 728. Numerous cases are cited to support the rule that, in order to constitute an aider and abettor, the accused must be guilty of some overt act or must share the criminal intent of the principal or the party who commits the crime. Mere presence, without more, does not constitute one an aider and abettor.

Judge Kelly, in *Brown* v. *Commonwealth*, 130 Va. 733, 107 S. E. 809, 16 A. L. R. 1039, quoting Minor's Synopsis Crim. Law, p. 11, says: "A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance. * * * . Every person who is present at the commission of a trespass, encouraging or inciting the same by words, gestures, looks or signs, or who in any way, or by any means, countenances or approves the same, is, in law, assumed to be an aider and abettor, and is liable as principal."

The agreed statement of facts reveals that Bertha

May Smith was so drunk at the time of the accidents that she "did not know whether she was driving the car or not and had no recollection of the accident." The owner of the car, knowing her condition, permitted her to drive. He claims that he was asleep at the time of the first collision, and that he was awakened by a jar, and glass cutting him in the face. Bertha May Smith remarked to him at the time, "I believe I killed a damn man back there." After being aroused from his slumber and apparently after Bertha May Smith made the above remark, he saw the car strike another man. He permitted Bertha May Smith to continue driving along the highway until she reached her home some distance from the scene of the accident. He then took the wheel and drove his car into the back yard of his home.

In *Story* v. *United States,* 16 F. (2d) 342, 53 A. L. R. 246, it is said: "If the owner of a dangerous instrumentality like an automobile knowingly puts that instrumentality in the immediate control of a careless and reckless driver, sits by his side, and permits him without protest so recklessly and negligently to operate the car as to cause the death of another, he is as much responsible as the man at the wheel."

None of the crimes charged is manslaughter. The offense is the failure to stop the automobile involved at the scene of the accidents, to furnish the information required and to render assistance to the parties injured. This statutory offense is a felony. The acts constituting the offense do not commence until after the injury or damages has been inflicted. *Henson* v. *Commonwealth,* 165 Va. 829, 183 S. E. 438. The accused was not drunk. He knew that Bertha May Smith was drunk. Nevertheless, he permitted her to drive, sat by her side, actually saw his automobile strike a man, and, in silence, allowed the driver to take him in his own automobile from the scene of the accident.

The accused contends that this evidence proves that the crimes were committed in his presence and noth-

ing more. The fallacy of this contention is that it ignores the fact that the owner of the automobile is entitled to control its operation. Such owner, riding with a driver to whom he has temporarily surrendered the operation of the car, may or may not be criminally responsible for a single act of recklessness resulting in injury or death to a third party. An accident may happen in a split second, too quickly for the owner to exercise this right of control. The offenses in question were committed after the injuries had been inflicted upon the pedestrians. The accused, with full knowledge of at least two collisions, permitted the driver to leave the scene without protest. It was his duty to control the operation of the car. Failure to perform this duty made the owner a participant in the offenses proven to have been committed.

The Supreme Judicial Court of Massachusetts held, in *Commonwealth* v. *Sherman*, 191 Mass. 439, 78 N. E. 98, that the owner of an automobile was criminally responsible where the evidence showed that he was riding in the car and knew that it was being operated by another at an illegal rate of speed. The same court held, in *Commonwealth* v. *Sallman*, 289 Mass. 554, 194 N. E. 703, that the owner retained control of the operation of an automobile, notwithstanding the fact that his chauffeur was the medium through which that control was exercised. When such owner was seated beside the driver, failure to exercise such control and prevent, so far as he was able, any conduct of his driver in violation of the criminal laws made him criminally responsible.

In *People* v. *Odom* (Cal. App.), 66 P. (2d) 206, this is said: "The offense of failing to stop an automobile which has struck and injured a person and to render assistance to the victim of the accident, * * * , applies with equal force to the owner of the machine who is riding therein at the time of the accident with full authority to direct and control the operation as it does to the person who is actually driving the vehicle. The term 'driver

of the vehicle,' as it is used in the statute, includes the owner of the machine who is present and has the control of its operation.''

In *Goodman* v. *State*, 20 Ala. App. 392, 102 So. 486, it is said: ''In law the owner of an automobile is liable if the vehicle is being operated by such owner or under his control, and in all cases where the owner is present he is liable for a noncompliance with a statute, unless the operator disobeys his instructions, as the owner is in control of the vehicle.'' See *People* v. *Rallo*, 119 Cal. App. 393, 6 P. (2d) 516; *People* v. *Steele*, 100 Cal. App. 639, 280 P. 999; *People* v. *Hoaglin*, 262 Mich. 162, 247 N. W. 141.

The trial court committed no error in holding the accused guilty as a principal in the second degree.

The accused contends that there was only one offense committed, and that he was sentenced on three indictments for the same offense.

The three indictments, charging three separate and distinct offenses, together with the three separate not guilty pleas, were submitted to the trial court on one agreed statement of facts. This statement contains the following: ''About 8:00 o'clock that night as Bertha May Smith approached the city of Danville * * * , she ran said automobile into three (3) men, to-wit: Melvin Carter, Ernest Canady and Delbert Cope, and that, as a result thereof, all three of said men were then and there instantly killed. At this point England James stated he woke up and some glass was coming into his face which cut him, and Bertha May Smith stated, 'I believe I killed a damn man back there.' The said Bertha May Smith failed to immediately stop at the scene of such accident and give the persons struck or injured, or to any other person, her name, address, chauffeur's license number or operator's permit number and did then and there fail to render to the said persons hereinbefore referred to as having been injured and killed reasonable assistance as required by, and in violation of section 2154 (104) of the Code of Virginia.''

The above agreed statement of facts describes and refers to one "scene" and one "accident" only. However, a part of the statement of facts is a confession signed by the accused on the night of the accident. It contains the following question and answer:

"Q. Did you see her run through the crowd of people?

"A. After I woke up from a jar I saw her hit one man."

This indicates that there was some interval between the time the accused felt the first jar and the time he saw the car strike another man. The distance between the sites of the accidents, if there were more than one, and the rate of speed at which the car was traveling are not stated. If it be conceded that this evidence establishes two separate and distinct accidents, it is certainly not sufficient to establish three.

 The extent of the property damaged or the number of people injured or killed does not constitute an element of the offense. It is the flight from the scene, and the failure to give the information required to the person in charge of the property damaged or succor to the injured which constitute the completed offense. The first act towards the commission of the crime is begun after the damage has been done or the injuries inflicted.

The Attorney General contends that the accused is precluded from attacking the judgments, or either of them, on the above ground. In support of this contention, he argues that this question was not raised in the lower court, and that the defense is, in substance, one of former jeopardy which is not raised by written plea.

The record reveals that when the trial court pronounced its judgment, "thereupon counsel for accused moved the court to set aside the judgments on each of the three indictments on the ground that said judgments were contrary to the law and evidence, which motion the court overruled, to which action of the court in overruling the said motion the defendant excepted in all three of the cases."

"The defendant therefore tenders this, his bill of exception No. 1 and prays the court to certify that it contains an accurate statement of the agreed facts and all of the facts with respect to the three cases mentioned, and prays that the same be signed, sealed and made a part of the record, which is accordingly done."

The burden was upon the Commonwealth to prove each distinct and separate charge made against the accused beyond a reasonable doubt. Because the accused agreed to submit to a trial on an agreed statement of facts did not relieve the Commonwealth of the duty to carry this burden.

The motion to set aside the judgments was directed to the conviction on each of the three indictments and was based on the ground that each of the convictions was contrary to the law and the evidence. We scan the agreed statement of facts in vain to find that there were three separate and distinct accidents. Except for the statement made by the accused on the night of the accident—that he was awakened by the jar and saw the driver hit one man—only one accident would have been established. This statement, read in connection with the other evidence, establishes two accidents only, and not three. The motion of the accused to set aside the judgments, and each of them, raised the specific question of the sufficiency of the evidence to support each conviction.

The Attorney General relies upon the case of *Zimmerman* v. *Commonwealth*, 148 Va. 745, 138 S. E. 569, to support his contention that the question now under discussion is in substance one of former jeopardy. In the *Zimmerman Case* there were two indictments returned against the accused. Indictment No. 1 charged him with unlawfully and feloniously manufacturing ardent spirits, which was a violation of one statute. Indictment No. 2 charged him with the manufacture of ardent spirits while carrying a pistol on his person within one hundred yards of the place where ardent

spirits were being manufactured, the violation of another statute. This court held that the failure of the accused to take advantage of the provisions of section 4775 by a written plea constituted a waiver of his rights under this statute.

In the case at bar there are three separate indictments charging three separate and distinct violations of the same statute, and an agreement of the Commonwealth and the accused to submit the three charges together upon an agreed statement of facts. The three charges might have been stated in separate counts in the same indictment. In such case, if the trial judge had found the accused guilty on each count and so stated in the judgment entered, the error would have been apparent. The Commonwealth should not be permitted to gain an undue advantage by obtaining separate indictments embracing the different charges. Failure to prove one of several charges, whether embraced in one indictment or separate indictments, acquits defendant of that particular charge or indictment.

The maximum penalty for any one of the offenses charged is five years in the penitentiary. The trial court, in its discretion, decided to sentence the accused to one year in the penitentiary on each of the three charges, thereby making a total of three years' confinement. The court could have inflicted the same punishment on the charge in one indictment and dismissed the other two. Its action in finding the accused guilty on each of the indictments is not supported by the evidence.

Ordinarily we would affirm the judgments on two indictments and reverse the judgment on the other, but it is impossible, from an examination of this record, to ascertain on which two of the three indictments to enter judgment and on which one to reverse it. Under the circumstances, we reverse each judgment and remand the cases to the trial court for new trials to be had in accordance with the views herein expressed.

*Reversed and remanded.*