## Manassas

THOMAS GEORGE NAULTY

v.

COMMONWEALTH OF VIRGINIA

No. 0574-85

Decided July 15, 1986

COUNSEL

John Q. Adams, for appellant.

Margaret Poles Spencer, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Thomas G. Naulty was convicted of manufacturing phencyclidine (PCP) and sentenced in accordance with the jury's verdict to thirty-five years imprisonment and a $10,000 fine. On appeal, Naulty presents four issues: (1) whether the trial court erred in finding that there was no plea agreement; (2) whether the trial court correctly ruled that admission of a videotape of the defendant did not violate the court's discovery order; (3) whether the trial court properly limited cross-examination of a Common-

wealth's witness; and (4) whether the evidence was sufficient to support the conviction. We find no reversible error in the trial court's rulings and affirm the conviction.

I.

On August 20, 1984, Naulty was arraigned and given a trial date of September 24, 1984. Approximately three weeks prior to the trial date, Naulty's attorney and the Commonwealth's attorney engaged in plea negotiations. Naulty's attorney prepared a written agreement dated September 8, 1984, which was signed by the Commonwealth's attorney. In that document, the Commonwealth's attorney agreed to recommend that upon entry of a guilty plea, Naulty would receive a sentence of eighteen years imprisonment to be served concurrently with a sentence he had received in Maryland.

Naulty's attorney left the document with Naulty for review. After three or four days, Naulty told his attorney that he could not sign it because "it was eighteen years of his life." Naulty's counsel related this information to the Commonwealth's attorney, and said that they had to prepare for trial. On September 19, 1984, Naulty changed his mind and signed the agreement. Naulty's attorney submitted it to the Commonwealth's attorney who informed him that "we have no agreement." After hearing these facts, the trial court held that there was no plea agreement because Naulty had rejected the Commonwealth's offer prior to signing the written document.

At trial, the Commonwealth produced evidence that Naulty purchased certain non-controlled chemicals, often used in the manufacture of PCP, from Melvin Schabilion, an undercover agent of the Drug Enforcement Agency (DEA). The date of the purchase was December 20, 1982. The purchase price of the chemicals was $2,401. Schabilion testified that if Naulty had purchased the same chemicals from a legitimate source, they would have cost $500. Naulty left the chemicals with a friend, Steve Lucas, in Rockingham County, Virginia, and asked Lucas to keep them until he returned. Lucas could not give the exact date that Naulty gave him the chemicals, but did say that it was sometime before Christmas. According to Lucas, Naulty returned with some friends soon after and they took the chemicals to a vacant house

near Lucas' grandmother's property. Lucas testified that he "seen them up there messing with them (the chemicals) and stuff." After Naulty and his companions left, Lucas hid the chemicals in some bushes off of his grandmother's property.

A search warrant was executed at Naulty's apartment in Baltimore on December 22, 1982. Only one of the chemicals sold to him by Agent Schabilion was found. However, Naulty's girlfriend informed DEA Agent Durant that Naulty had left the chemicals with a man named "Grape" in Virginia. The agents found a telephone number for "Grape" written down in Naulty's apartment. That phone number was listed to Patty Campbell in Rockingham County, Virginia. Her grandson, Steve Lucas, was nicknamed "Grape."

A search warrant was obtained for Campbell's property and was executed on January 4, 1983. All of the chemicals which Naulty purchased from Schabilion were recovered at this location, except for the one chemical which had been found earlier at Naulty's apartment. The police also found a glass cup containing a solid white residue. This residue was analyzed by a chemist and found to contain PCP. The other chemicals seized were also analyzed and each was found to match the label of its respective container. Using all of the chemicals which had been seized, the chemist was able to manufacture PCP.

In addition, the jury also heard testimony from a Baltimore police officer who read portions of a statement that Naulty had made while in custody. This statement included the following:

Q. Where did you get the chemicals to make the PCP we caught you with?

A. Byron had 3 or 4 pounds of crystal and Byron mixed some in Virginia when we were there. I made a deal with Byron if he would teach me to make PCP I would give him some of everything I bought.

The jury also viewed a videotape of Naulty purchasing the chemicals from Agent Schabilion in Chicago. The videotape was received in evidence over Naulty's objection.

## II.

Naulty first argues that the trial court erred in finding that there was no plea agreement. He contends that a plea agreement offered by the Commonwealth is valid if accepted within a reasonable time before trial, unless the Commonwealth notifies the defendant, prior to acceptance, that the offer is withdrawn.

The trial court, however, found that Naulty had rejected the Commonwealth's offer and that consequently no plea agreement had ever been reached. A factual finding made by the trial court is binding on appeal unless plainly wrong. *McFadden* v. *Commonwealth*, 225 Va. 103, 108, 300 S.E.2d 924, 926 (1983). The record before us contains ample evidence in support of the court's finding. It is uncontroverted that Naulty specifically told his lawyer he would not accept the agreement. This occurred eleven or twelve days before the trial. It is also uncontroverted that Naulty's counsel communicated Naulty's rejection of the offer to the Commonwealth's attorney, and informed the prosecutor that "we had to prepare for the trial." Naulty's rejection of the offer, combined with the communication of this fact to the Commonwealth's attorney, constitutes overwhelming evidence in support of the trial court's finding that there was no plea agreement. Once the offer was rejected, the Commonwealth had no duty to renew it. *See Mabry* v. *Johnson*, 467 U.S. 504 (1984) (finding no constitutional violation when the prosecution withdrew a proposed plea agreement when the defendant attempted to accept it.)

## III.

We next address the issue whether the trial court was correct in ruling that admission of the videotape of the defendant purchasing the chemicals did not violate the court's discovery order. In that order, the court granted Naulty's request for "production of a full and complete copy of each and all statements alleged to have been made by the defendant to law enforcement agencies or authorities, in accordance with *Brady* v. *Maryland*." In the same order, the court also granted Naulty's request for "the substance of all oral statements and a copy of any written or recorded statements, confessions and/or admission, whether inculpatory or exculpatory in nature, made by Thomas Naulty, to the Commonwealth Attorney

or any other law enforcement officer."

Naulty does not allege that the videotape contained any exculpatory material, as defined in *Brady* v. *Maryland*, 373 U.S. 83 (1963). Therefore, his right to discovery of the videotape rests on his request for "all oral statements and a copy of any written or recorded statements" made by Naulty to any law enforcement officer.

■ The trial court held that the videotape was not "a matter that's contemplated under the discovery rule." We disagree. Rule 3A:11(b)(1)(i), by its language, is not limited only to confessions or other post-arrest written or recorded statements.[1] It places no limitation, except relevance, on the accused's right to discover written or recorded statements made by him. We therefore find that the videotape was a recorded statement made by Naulty and discoverable under Rule 3A:11(b)(1)(i).

■ Having found that Naulty was entitled to the videotape, we must determine whether he suffered prejudice as a result of the court's ruling. "When a discovery violation does not prejudice the substantial rights of a defendant, a trial court does not err in admitting undisclosed evidence." *Davis* v. *Commonwealth*, 230 Va. 201, 204, 335 S.E.2d, 375, 377-78 (1985). Naulty does not allege any specific prejudice suffered as a result of the tape's admission, nor is any prejudice apparent from the record. As noted by the trial court, prior to trial the Commonwealth had advised Naulty of the substance of the videotape conversation. In addition, the court permitted Naulty and defense counsel to view the tape outside of the jury's presence prior to its introduction. If Naulty had been surprised by the content or otherwise unprepared to deal with it, he could have requested a continuance.[2] However, he did not elect to do so. Therefore, although the videotape should have been produced under the discovery order, its admission into evi-

---

[1]  Rule 3A:11(b)(1)(i) provides for discovery by the defendant of any relevant "written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the attorney for the Commonwealth."

[2]  If it is brought to the attention of the court that the Commonwealth has failed to comply with a discovery order, the court "may order the Commonwealth to permit the discovery or inspection, grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or . . . enter such other order as it deems just under the circumstances." Code § 19.2-265.4; *see also* Rule 3A:11(g).

dence did not constitute reversible error because no prejudice has been alleged or demonstrated by its nondisclosure. *Davis*, 230 Va. at 205, 335 S.E.2d at 378.

## IV.

Naulty next argues that the trial court erred in limiting his cross-examination of Agent Schabilion. Naulty's counsel asked Schabilion several questions concerning the condition of the seals on the containers in which the chemicals were placed. After having already admonished counsel that his continued questions were repetitive and outside the witness' knowledge, the court instructed counsel to move to a new line of questioning.

Limitation of cross-examination is a matter within the sound discretion of the trial court and is subject to review only for abuse of discretion. *Spruill* v. *Commonwealth*, 221 Va. 475, 485, 271 S.E.2d 419, 425 (1980). The record before us clearly shows that the trial court did not abuse its discretion in instructing counsel to begin a new line of inquiry. We find that the trial court accurately characterized counsel's continuing questions regarding the seals as repetitive and beyond Agent Schibilion's personal knowledge. Therefore, the trial court did not err in limiting counsel's cross-examination in this regard.

## V.

We turn now to examine Naulty's argument that the evidence was insufficient to support his conviction. We review the evidence in accordance with the standard set forth in *Higginbotham* v. *Commonwealth*, 216 Va. 349, 218 S.E.2d 534 (1975):

Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from he evidence that the judgment is plainly wrong or without vidence to support it.

*Id.* at 352, 218 S.E.2d at 537 (citations omitted).

Naulty alleges that the evidence failed to show that he manufactured or assisted in the manufacture of PCP. We disagree. The

jury heard testimony that Naulty had purchased from the DEA "undercover store" in Chicago, the precursor chemicals necessary to manufacture PCP. He paid the DEA agent approximately four times more for the chemicals than their legitimate worth. This purchase price was circumstantial evidence of Naulty's intent and knowledge of the potential nature of that combination of chemicals.

The date Naulty purchased the chemicals was December 20, 1982. According to Steve Lucas, Naulty first visited him sometime before Christmas and asked him to hold some chemicals for him. A few days later, Naulty returned with some friends. At this time, Lucas saw them "up there messing with them (the chemicals) and stuff."

All of the precursor chemicals which Naulty purchased from Agent Schabilion were recovered. One was found in Naulty's apartment. The rest were found, along with a cup containing PCP residue, in some bushes where Lucas had hid them after Naulty and his companions had left the area of Lucas' grandmother's property.

In addition, the jury heard testimony from a Baltimore police officer that, when asked where he got the chemicals to make the PCP he was caught with, Naulty responded that his friend Byron "mixed some in Virginia when we were there." Naulty further admitted that he had "made a deal with Byron if he would teach me to make PCP I would give him some of everything I bought."

From this evidence, the jury was entitled to find that Naulty actively participated in the manufacture of PCP by providing the precursor chemicals necessary to make it, by arranging for a location to make the drug, and by bringing another person to that location who knew how to make PCP where it was in fact manufactured. The evidence was therefore sufficient to support a conclusion that Naulty was present, actively aiding and abetting the manufacture of PCP as a principal in the second degree. *Sutton* v. *Commonwealth*, 228 Va. 654, 666, 324 S.E.2d 665, 671 (1985).

In summary, we find that the trial court did not err in finding that there was no plea agreement; that, although admission of the videotape violated the court's discovery order, its admission was harmless error; that the trial court properly limited the cross-ex-

amination of Agent Schabilion; and that the evidence was sufficient to support the conviction. Accordingly, the judgment of conviction is affirmed.

*Affirmed.*

Duff, J., and Cole, J., concurred.