COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


BO JASON TOOKE
                                                        OPINION BY
v.        Record No. 2335-04-2              JUDGE SAM W. COLEMAN III
                                                       MARCH 28, 2006
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CAROLINE COUNTY
                    Horace A. Revercomb, III, Judge

        Gregory R. Sheldon (Goodwin, Sutton & DuVal, P.L.C., on brief),
        for appellant.

        Kathleen B. Martin, Assistant Attorney General (Judith Williams
        Jagdmann, Attorney General, on brief), for appellee.


        Bo Jason Tooke was convicted in a bench trial of two counts of failure to stop at the

scene of an accident in violation of Code § 46.2-894.  The convictions arose from a motor

vehicle accident in which Tooke forced an oncoming vehicle to go off the road and crash without

any collision or impact between the two vehicles.

        On appeal, Tooke contends the evidence was (1) insufficient to support two separate

counts of failing to stop at an accident scene when there had been a single accident but two

people injured and (2) insufficient to prove he knew an accident had occurred.  Because the

accident was a single incident, the evidence was insufficient to prove two separate offenses; thus,

we reverse and vacate one conviction and affirm the other.

I.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

On the afternoon of December 24, 2003, Tooke was driving north on Route 301, a two-lane highway, in Caroline County. He was on his way home in Bowling Green from work at a construction site in Mechanicsville. It was early in the afternoon, and Tooke had worked only a half-day because it was Christmas Eve. Dennis Buchanan, an insurance investigator and retired police officer, was driving behind Tooke before and at the time of the accident. Buchanan testified that he first observed Tooke when they stopped at the traffic light at the intersection of Route 301 with Route 30, at which time all four wheels of Tooke's vehicle extended past the stop line and into the intersection. As Buchanan drove northward behind Tooke for the next five or six miles, he observed Tooke driving erratically, with the driver's side tires twice completely crossing the center line into the southbound lane and twice the right side tires went onto the shoulder. According to Buchanan, they were both driving within the posted speed limit at fifty to fifty-five miles per hour. At some point before the accident, Tooke began following a slower moving older pickup truck. According to Buchanan, after following the truck for some distance Tooke drove his vehicle entirely into the left southbound lane as if to pass the truck.

As Tooke moved into the left lane, a van was approaching, traveling southbound. The van was only about fifty to seventy-five yards away. To avoid the collision Tooke immediately veered back into the northbound lane behind the pickup. Although the vehicles did not collide, they passed within a couple of feet of each other. According to Buchanan, he observed the

driver of the van, Leslie Purdem, veer to the right to avoid a collision and onto the shoulder of the road, then back onto the road and into the northbound lane, and then back onto the southbound shoulder and into the woods.[1] Purdem and her passenger husband were severely injured in the accident. Buchanan saw the Purdem van crash into the woods, as did the driver behind Buchanan who stopped to render aid to the crash victims. Buchanan continued to follow Tooke in order to get his license number and report the accident. Buchanan testified that as he followed Tooke after the accident Tooke no longer drove erratically, did not attempt to pass the pickup truck, and did not weave or drift into the other lane or off the shoulder.

Tooke denied that he was attempting to pass; he said instead that he fell asleep and his vehicle drifted entirely into the southbound lane and oncoming traffic. Tooke testified that he awoke to find himself in the path of oncoming traffic, and immediately swerved back into the correct lane when he realized what was happening. He testified that he did not see the van go off of the road or crash into the woods and was unaware an accident had occurred.

---

[1] Buchanan testified as follows:

> Well, when the van went behind me, it was still on the shoulder. I looked in my rearview mirror, like Mr. Tooke said he did, and I saw the van come back, and I said, good, the van made it. Then, it went back into the woods. So, I could see in my rearview mirror thirty yards maybe.

> \* \* \* \* \* \* \*

> The van came into the northbound lane, came across the southbound to the northbound and then into the trees.

> \* \* \* \* \* \* \*

> They came over and went back to the right side.

## II.

## ANALYSIS

*Sufficiency of the Evidence to Support Two Separate Charges*

On appeal, Tooke contends the trial court erred in finding the evidence sufficient to support two separate charges of failure to stop at the scene of an accident. He failed, however, to raise this issue at trial. Rule 5A:18 precludes this Court from considering an issue on appeal unless the appellant objected at trial in order to provide the trial judge an opportunity to consider and rule upon the issue *unless* "good cause [is] shown [for failing to object] or [unless it is necessary for us to address the issue] to enable [this Court] to attain the ends of justice" and prevent a miscarriage of justice.

"The ends of justice exception is narrow and is to be used sparingly," and only when a trial court error is "clear, substantial and material." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Id. (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). "In examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." Lewis v. Commonwealth, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004), rev'd on other grounds, 269 Va. 209, 608 S.E.2d 907 (2005). See also Michaels v. Commonwealth, 32 Va. App. 601, 529 S.E.2d 822 (2000); Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

Code § 46.2-894 states:

> The driver of any vehicle involved in *an accident* in which a
> person is killed or injured or in which an attended vehicle or other
> attended property is damaged shall immediately stop as close to the
> scene of *the accident* as possible without obstructing traffic . . . and

- 4 -

report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, to the person struck and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with or to the custodian of other damaged property. The driver shall also render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person.

(Emphasis added.)

The gravamen of the offense under the statute is a single accident, regardless of the number of persons injured or the extent of the damage. Nowhere does the statute mention that failure to stop and assist each person involved in a single accident is a separate crime. Thus, in construing Code § 46.2-894, the Supreme Court has held:

The extent of the property damaged or the number of people injured or killed does not constitute an element of the offense. It is the flight from the scene, and the failure to give the information required to the person in charge of the property damaged or succor to the injured which constitute the completed offense.

James v. Commonwealth, 178 Va. 28, 37, 16 S.E.2d 296, 300 (1941).

The Attorney General acknowledges that the holding in James is controlling and that Tooke should not have been convicted of two violations of Code § 46.2-894. In view of James and the concession, we hold that appellant was convicted of two counts of failure to stop at the scene of an accident when, as a matter of law, the evidence proved a single offense. Because appellant was convicted twice for conduct that was but one criminal offense, a miscarriage of justice occurred. We therefore reverse and vacate the criminal conviction as to one of the two convictions. We remand for the dismissal of that indictment.

*Sufficiency of the Evidence to Support that Appellant Knew an Accident Occurred*

An element of the charged crime, commonly referred to as "hit and run," is actual knowledge that an accident occurred.

Actual knowledge is a fact that may be proved by direct or circumstantial evidence. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). A fact finder may rely upon a combination of circumstances to support a conviction, even though each circumstance in isolation would be insufficient. Stamper v Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979). Moreover,

> "[i]f the proof relied upon by the Commonwealth is wholly circumstantial . . . then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt."

Higginbotham, 216 Va. at 352-53, 218 S.E.2d at 537 (quoting LaPrade v. Commonwealth, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950)). The trial judge, in his role as fact finder, found that Tooke had actual knowledge of the accident and that an injury would have occurred, and his judgment cannot be set aside unless it is "plainly wrong." Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

Here, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential element[ ] of [actual knowledge] beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The circumstantial evidence and reasonable inferences which the trial judge, as fact finder, may have drawn therefrom support the factual finding that Tooke had actual knowledge of the accident.

- 6 -

The evidence shows that Tooke drove his vehicle into the opposite travel lane in the face of oncoming traffic. Whether he did so in a conscious effort to pass a slower-moving pickup truck or because he "nodded off" and drifted into the wrong lane of travel, as he stated, is of no consequence. The dispositive question before the trial court and before us is whether Tooke knew that his action of driving into the wrong lane had caused an accident in which the occupants would have sustained personal injury. Here, according to Tooke's own testimony and that of Buchanan, Tooke's vehicle was entirely in the southbound lane; his vehicle and the Purdem van were within fifty to seventy-five yards on a collision course; at the last moment Tooke pulled back into his northbound lane, passing within a few feet of the Purdem van and narrowly avoiding a collision. Both Buchanan and the driver of the vehicle behind him observed the Purdem vehicle veer off the shoulder of the road to avoid a collision and then proceed into the woods. Buchanan's observations that an accident had occurred with the crash of the van into the woods were sufficient to cause him to follow Tooke to obtain his license number and to report the accident. The other driver's observations that the van had been forced off the road and crashed into the woods were sufficient to cause him to stop and render assistance to the seriously injured passengers.

Tooke, who pulled back into his travel lane behind the pickup truck, had an equal or better opportunity than Buchanan or the following driver to have observed that he had forced the van to veer onto the shoulder of the road, lose control and come back across the road, and then go off the traveled portion of the road, crashing into the woods. Although Tooke testified that he was too intent on getting back into his lane of travel to have observed what happened with the Purdem van, on these facts, the trial judge found that the circumstances proved beyond a reasonable doubt that Tooke knew that he had caused an accident in which the occupants of the vehicle would have sustained personal injury. The fact finder has the right to reject parts of the

- 7 -

evidence as untrue and accept other parts. <u>Belton v. Commonwealth</u>, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). Here, the trial judge, acting within his capacity as the fact finder, rejected much of Tooke's testimony, stating it "defie[d] logic" to think he did not know an accident had occurred.

Because the evidence, and reasonable inferences to be drawn therefrom, when viewed in the light most favorable to the Commonwealth, are sufficient to prove appellant had actual knowledge of the accident, we affirm Tooke's conviction.

We therefore reverse and vacate one conviction and affirm the other and remand the case to the circuit court with directions to vacate one of Tooke's convictions and to dismiss that indictment.

<u>Affirmed in part,</u>
<u>reversed and vacated in part,</u>
<u>and remanded.</u>

Benton, J., concurring, in part, and dissenting, in part.

For the reasons given in the majority opinion, I concur in the holding that the evidence was not sufficient to support two separate violations of Code § 46.2-894. I would also hold, however, that the evidence was insufficient to prove Bo Jason Tooke was aware that any accident occurred involving an injury or damaged property.

The sole issue is whether the evidence proved Tooke knew the van had crashed. The testimony and evidence about the events are reasonably consistent. Dennis Buchanan testified he drove northbound behind Tooke for about six miles before the incident. In that distance, he saw Tooke's car stray out of the travel lane to the left twice and to the right twice. As Buchanan watched Tooke's car, he concluded that Tooke was having some difficulty because Buchanan said to himself "this guy is going to go off the road and hit a tree and kill himself."

When Tooke and Buchanan approached a northbound truck ahead of Tooke, Tooke's car moved "all of a sudden . . . out in the fast lane." Buchanan saw a van approaching in the southbound direction "fifty to seventy-five yards away." Tooke's car immediately came back into the northbound travel lane behind the truck. No evidence proved Tooke's car accelerated when it moved into the opposite travel lane. Although Buchanan surmised that Tooke suddenly moved "to pass this truck," he testified that Tooke only "stayed in the lane for five to ten seconds" before moving back to avoid the oncoming van. He also testified that Tooke's car "never did pass the truck" and that they "weren't speeding."

As Tooke's car came back into the northbound lane, the van that was traveling southbound moved onto the shoulder of the highway and passed Tooke's car. No collision or contact occurred between the two vehicles. Buchanan testified that the van and Tooke's car passed "within a couple of feet" and that Tooke continued northbound on the highway. Buchanan followed Tooke and observed that Tooke drove "perfect[ly]" from that point.

- 9 -

This evidence failed to prove Tooke knew that the driver lost control of the van and crashed after returning to the southbound lane. "Knowledge necessarily is an essential element of the crime. . . . '[I]t must be present in [the driver's] mind that there has been an injury; and then, with that in mind, he must deliberately go away.'" Herchenbach v. Commonwealth, 185 Va. 217, 220, 38 S.E.2d 328, 329 (1946) (citation omitted)). Thus, to prove the driver "guilty of violating the statute," the evidence must prove beyond a reasonable doubt that "'the driver [was] aware that harm has been done.'" Id. (citation omitted).

I believe the majority incorrectly concludes that the circumstantial evidence in this case excludes every reasonable hypothesis of Tooke's innocence. It is not sufficient that two drivers who were behind Tooke, and thus closer to the van when it crashed, knew that an accident occurred. To convict Tooke based on circumstantial evidence, the Commonwealth must "exclude all reasonable conclusions inconsistent with that of guilt." LaParade v. Commonwealth, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950); see also Commonwealth v. Smith, 259 Va. 780, 783, 529 S.E.2d 78, 79 (2000).

The trial judge found that "the accident had already begun before [Tooke] knew his vehicle was in the wrong southbound lane and headed back into the northbound lane." From that premise, the judge concluded the evidence proved Tooke knew of the ensuing events because "he knew of this close encounter." This conclusion is not supported by the evidence.

Buchanan's testimony suggests that Tooke likely did not see the events that occurred after the near collision. Buchanan testified that he watched the van in his rearview mirror after the near collision. As Buchanan continued northward, he "saw the van come back [onto the road] and . . . said, good, the van made it." Thus, Buchanan, who was fully alert, initially believed the near collision had no consequential effect. Only as Tooke and Buchanan continued northbound on the highway did Buchanan notice that the van continued to move across the

highway. Buchanan testified that after he saw the van return to the highway in its proper lane of travel, the southbound lane, he then saw it move "into the northbound lane" and then return to the southbound lane before leaving the highway and hitting trees.

No evidence proved that Tooke saw the van cross from the southbound lane into the northbound lane, return to the southbound lane, and then leave the highway before crashing into the trees. As these events were occurring, at least one other vehicle was behind Buchanan's vehicle. The presence of Buchanan's vehicle behind Tooke and another vehicle behind Buchanan's vehicle, all moving at fifty-five miles per hour, suggests Tooke may not have been in a position to see the van after it returned to its travel lane. Certainly, Buchanan's expression of relief that the van was not in difficulty when it came back onto the roadway, provides a reasonable hypothesis that Tooke had reason to believe the incident had not caused injury or damage to the van.

Additionally, no objective facts indicate Tooke was aware the van crashed. Buchanan did not testify that Tooke's brake lights illuminated. Buchanan also did not testify that Tooke's speed momentarily dropped below the speed limit. Thus, the evidence does not show Tooke had even a momentary hesitation or awareness that something untoward later happened. Furthermore, the evidence did not establish the contour of the highway beyond "the close encounter" or the type of vehicles behind Tooke. In other words, the evidence failed to prove the highway was straight, giving a clear line of sight as Tooke and Buchanan continued northward, or to prove Tooke could have had an unobstructed view to his rear.

Based on Buchanan's telephone call as he followed Tooke, a deputy sheriff arrested Tooke and took him back to the scene of the incident. The deputy sheriff testified that Tooke "said . . . the only thing [he remembered was] being tired and swerving." The deputy sheriff also testified Tooke said he saw no accident. The deputy sheriff did not testify he detected any traces

of alcohol as he questioned Tooke. Consistent with the Commonwealth's evidence, Tooke testified at trial that he was going home from work, became tired, and began to "nod off." He explained that he "nodded off to sleep" and then "came to [his] senses, [seeing] traffic coming [toward him] because [he] was in the wrong lane." He corrected his swerve and continued driving, now alert after the near collision.

"It is, of course, a truism of the criminal law that evidence is not sufficient to support a conviction if it engenders only a suspicion or even a probability of guilt. Conviction cannot rest upon conjecture." Smith v. Commonwealth, 192 Va. 453, 461, 65 S.E.2d 528, 533 (1951). "The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence." Cameron v. Commonwealth, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970). The evidence merely created a suspicion that Tooke had knowledge the van later collided with a tree; however, "it is not sufficient to create a suspicion or probability of guilt, [because] the evidence must establish the guilt of an accused beyond a reasonable doubt." Id. at 110, 175 S.E.2d at 276.

While Tooke may have committed a driving offense, the Commonwealth's evidence failed to prove he violated Code § 46.2-894 (duty to report information and render assistance when a driver is involved in an accident in which injury or damage occurs). Simply put, the evidence failed to prove Tooke knew the near collision resulted in harm, a necessary element of the crime. Herchenbach, 185 Va. at 220, 38 S.E.2d at 329. For these reasons, I would reverse both convictions and dismiss the indictments.