COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Alston
Argued at Richmond, Virginia


TANIKA L. DURAND
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1348-08-1                       JUDGE ROBERT J. HUMPHREYS
                                                    SEPTEMBER 22, 2009
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                              Mark S. Davis, Judge

              Joseph A. Sadighian, Senior Assistant Appellate Defender, for
              appellant.

              Craig W. Stallard, Assistant Attorney General (William C. Mims,
              Attorney General, on brief), for appellee.


        Tanika L. Durand ("Durand") appeals her conviction, following a jury trial, for

second-degree murder in violation of Code § 18.2-32.  On appeal, Durand specifically claims

that the trial court erred in:  1) denying the motion to suppress Durand's initial statements,

arguing that she made them to the police while she was in custody but prior to Miranda warnings

being given; 2) denying the motion to strike the charge of murder to voluntary manslaughter,

arguing that the evidence did not prove she acted maliciously; and 3) finding that there was

sufficient evidence to corroborate Durand's "confession."  For the following reasons, we

disagree and affirm her conviction.

                              A.  Motion to Suppress

        First, Durand contends that the trial court erred in denying the motion to suppress her

initial statements to the detectives in the audio-visual room, arguing that she made them to police

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

while she was in custody but prior to <u>Miranda</u> warnings being given.  Therefore, Durand claims that the trial court should have granted the motion to suppress the initial statements.

"On appeal from a trial court's denial of a motion to suppress, we must review the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it."  <u>Sabo v. Commonwealth</u>, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002) (citing <u>Commonwealth v. Grimstead</u>, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)).  This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (quoting <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996)).  However, "we review *de novo* the trial court's application of legal standards . . . to the particular facts of the case."  <u>McCracken v. Commonwealth</u>, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (citing <u>Ornelas</u>, 517 U.S. at 699).

"The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error."  <u>McCain v. Commonwealth</u>, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citing <u>Fore v. Commonwealth</u>, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).  Viewed in this light and based on the totality of the evidence presented to the trial court, we hold that Durand's initial statements to the police were not made while she was in custody.

When a question arises regarding a confession, "'the issue is controlled by that portion of the Fifth Amendment . . . commanding that no person shall be compelled in any criminal case to be a witness against himself.'"  <u>Aldridge v. Commonwealth</u>, 44 Va. App. 618, 639, 606 S.E.2d 539, 549 (2004) (quoting <u>Missouri v. Seibert</u>, 542 U.S. 600, 607 (2004) (internal quotations and

emphasis omitted)).  The United States Supreme Court has held that an individual must be warned of his right to an attorney and his right to remain silent when the "individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning."  Miranda v. Arizona, 384 U.S. 436, 478 (1966).  However, "[t]he United States Supreme Court has long recognized that Miranda warnings are implicated only during a custodial interrogation."  Aldridge, 44 Va. App. at 641, 606 S.E.2d at 550 (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).  Therefore, "'police officers are not required to administer Miranda warnings to everyone whom they question,' and Miranda warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'"  Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 261-62 (1998) (quoting Mathiason, 429 U.S. at 495).

Whether an individual is "in custody" for Miranda purposes is "determined based on the circumstances of each case, and the 'ultimate issue is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest.'"  Id. at 564, 500 S.E.2d at 262 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)).  This determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."  Aldridge, 44 Va. App. at 542, 606 S.E.2d at 551 (quoting Stansbury v. California, 511 U.S. 318, 323 (1994)).  "If a reasonable person in the suspect's position would have understood that he or she was under arrest, then the police are required to provide Miranda warnings before questioning."  Harris, 27 Va. App. at 564, 500 S.E.2d at 262.

The circumstances considered in determining whether an individual is "in custody" are the following:

> (1) the manner in which the individual is summoned by the police,
> (2) the familiarity or neutrality of the surroundings, (3) the number

of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual.

Id. at 565, 500 S.E.2d at 262.  But, "[n]o single factor is dispositive of the issue.  Id. at 566, 500 S.E.2d at 262 (citing Wass v. Commonwealth, 5 Va. App. 27, 33, 359 S.E.2d 836, 839 (1987)).

In this case, the detectives summoned Durand by asking her to come to the police station. The police did not take her in to the station nor was she coerced into going to the police station. The first time they asked her to come was after they had completed the child death form at her home, and the second time was after social services removed the two older children from the home.  On both occasions, the detectives asked that she come down to the station for more questioning, and she replied that she would.  Durand voluntarily went to the police station.  A reasonable person in this situation would not determine that they were in custody when they voluntarily went to the police station for further questioning.

The mere fact that an interview takes place at the police station does not mean that it is automatically a custodial situation.  "It is the custodial nature rather than the location of the interrogation that triggers the necessity of giving Miranda warnings."  Coleman v. Commonwealth, 226 Va. 31, 47, 307 S.E.2d 864, 872 (1983).  "'[T]he requirement of warnings [is not] to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'"  Aldridge, 44 Va. App. at 644, 600 S.E.2d at 552 (quoting Mathiason, 429 U.S. at 495).  Durand voluntarily went to the police station and was escorted into an audio-visual room rather than a typical interview room and the door was left open for the entire interview.  Upon entering the room, she was immediately informed by Detective Dempsey that "You're not under arrest, and you're free to leave at any time."  While the audio-visual room was fifty (50) feet from the waiting room, and Durand had

- 4 -

to walk through the detective bureau to get to the room, a reasonable person would not think they were in custody merely because they were moved to another location within the police station.

Similarly, a reasonable person would not have concluded from the duration and character of the interview that she was not free to leave. Although Durand's husband was questioned first, his interview lasted only fifteen to twenty (15-20) minutes thus making her wait only a minimal amount of time before her interview started. Once her interview started in the audio-visual room, it lasted less than forty-five (45) minutes.

During the interview, only two police officers were present, and neither one of them used any degree of physical restraint. The audio-visual room where the interview took place held equipment and desks, and the officers sat in chairs two to three (2-3) feet across from Durand with nothing in between. At no point did they grab her arm or use any physical restraint. Nor is there any evidence showing that the detectives attempted to overwhelm her or overbear her will with a lot of questions. They used calm voices to elicit responses, and while they asked repeated questions, the questions asked were not coercive in nature. Considering the totality of the circumstances, the facts do not support the conclusion that Durand was in custody when she spoke with the police in the audio-visual room.

Lastly, with regard to whether the officers manifested a belief concerning Durand's potential culpability,

> a consideration of this factor "encompasses the degree to which it was conveyed to the suspect that he or she was the focus of a criminal investigation," and it also "includes circumstances such as the appearance of probable cause to arrest and the extent to which the individual is confronted with evidence of guilt."

Aldridge, 44 Va. App. at 645, 606 S.E.2d at 552-53 (quoting Harris, 27 Va. App. at 566 n.2, 500 S.E.2d at 262 n.2). The United States Supreme Court noted that it is well settled that

> "a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the

question whether the individual is in custody for purposes of <u>Miranda</u>. The same principle obtains if an officer's undisclosed assessment is that the person questioned is not a suspect. In either instance, one cannot expect the person under interrogation to probe the officer's innermost thoughts. Save as they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the <u>Miranda</u> custody inquiry.

An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "'freedom of action.'" Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case."

<u>Aldridge</u>, 44 Va. App. at 646, 606 S.E.2d at 553 (quoting <u>Stansbury</u>, 511 U.S. at 324-25).

Here, the record shows that Detective Dempsey questioned Durand pertaining to the possibility of her involvement in a child neglect case. While they had suspicions about the facts surrounding the situation, they did not convey to Durand that they had any evidence of her committing a crime. The record also does not suggest that the detectives were certain or even had probable cause that Durand was responsible for Anthony's death before she made the incriminating statements in the audio-visual room. During the interview they informed her that her statements were inconsistent with the evidence that they had. At no time in the interview did they communicate to Durand that they believed she was guilty of Anthony's death, nor did they communicate to her that they thought the interview would lead to her arrest. Even though she made a statement that she covered Anthony's mouth with a sheet, a reasonable person would not automatically believe that their freedom of movement was immediately restricted upon making

- 6 -

that statement. They informed her at the outset that she was free to leave and not under arrest, and did not convey at any point that those facts had changed.

This case is similar to the situation in Aldridge, in which this Court held that the trial court properly denied the motion to suppress Aldridge's confession because the police acted properly due to the fact that she was not in custody at the time she made the statements, nor was her freedom of movement restricted until after she made the incriminating statements. 44 Va. App. at 647, 606 S.E.2d at 553. Specifically, this Court stated that "although Detective Huffman agreed that he viewed Aldridge as a potential suspect before the interview began, the record does not suggest that the detectives were certain as to Aldridge's culpability before her initial incriminating statement." Id.

Based on the totality of the evidence, we hold that Durand was not in custody at the time she made the incriminating statements in the audio-visual room because she was not under formal arrest nor was her freedom of movement restricted. Therefore, the detectives were not required to advise Durand of her Miranda rights. Thus, the trial court did not err in denying the motion to suppress Durand's statements made in the audio-visual room.

### B. Motion to Strike the Charge from Murder to Voluntary Manslaughter

Durand also contends that the trial court erred in denying the motion to strike the charge of murder to voluntary manslaughter, arguing that the evidence was insufficient to support a finding by the jury of second-degree murder. The evidence presented at trial supported a "rational trier of fact's" conclusion that Durand committed second-degree murder by maliciously suffocating Anthony who died as a result of the suffocation. Therefore, the trial court did not err in denying the motion to strike, and we affirm the conviction.

When the sufficiency of the evidence is challenged on appeal, "'we presume the judgment of the trial court to be correct' and 'will not set it aside unless it is plainly wrong or

without evidence to support it.'" Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992); Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)); Code § 8.01-680. We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Practically speaking, this means a jury's decision cannot be disturbed on appeal unless no 'rational trier of fact' could have come to the conclusion it did." Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 12-13 (2004) (citing Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc)).

The reviewing court, under this standard, does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). Instead, the reviewing court asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

In reviewing the sufficiency of the evidence to support a conviction, "we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999). "[W]hen we consider the sufficiency of the evidence we do not consider each piece of evidence in isolation. Instead, we review the totality of the evidence to determine whether it was sufficient to prove an offense." Bowling v. Commonwealth, 51 Va. App. 102, 107, 654 S.E.2d 354, 356 (2007) (citing Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004)).

In Virginia, a homicide is presumed to be second-degree murder. Code § 18.2-32; Willis v. Commonwealth, 10 Va. App. 430, 443, 393 S.E.2d 405, 412 (1990). In order to convict an individual of second-degree murder, the defendant must have acted with malice. See Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). "Implied malice may be inferred from 'conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken.'" Canipe, 25 Va. App. at 642, 491 S.E.2d at 753 (quoting Essex v. Commonwealth, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984)).

"Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." Id. "In making the determination whether malice exists, the fact-finder must be guided by the quality of the defendant's conduct, its likelihood of causing death or great bodily harm, and whether it was volitional or inadvertent . . . ." Essex, 228 Va. at 282, 322 S.E.2d at 221.

Manslaughter is "the unlawful killing of another without malice." Canipe, 25 Va. App. at 642-43, 491 S.E.2d at 753 (citing Barrett v. Commonwealth, 231 Va. 102, 105, 341 S.E.2d 190, 192 (1986) (citation omitted)). "To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation." Barrett, 231 Va. at 105-06, 341 S.E.2d at 192 (citing Martin v. Commonwealth, 184 Va. 1009, 1016-17, 37 S.E.2d 43, 46 (1946)). "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." Id. at 106, 341 S.E.2d at 192 (citations omitted). "Heat of passion" occurs when "the *furor brevis* . . . renders a man deaf to the voice of reason." Hannah v. Commonwealth, 153 Va. 863, 870, 149 S.E. 419, 421 (1929).

Here, Durand's conduct shows that she willfully undertook an act that would likely cause death or great bodily harm without reasonable provocation. She told the detectives that Anthony had been screaming and crying and she could not figure out why. Then, after she picked him up and put him back down she could not take it anymore and for at least two minutes she intentionally placed her hand and a sheet over Anthony's mouth until he stopped moving. She then returned him to the crib, placed a pacifier in his mouth, and left him alone without checking whether he was breathing. The action of placing the sheet over his mouth and holding it there for two minutes was malicious.

Durand asserts that she acted out of heat of passion, yet nothing in the record supports this assertion. Her conduct was not done in self-defense, nor was she provoked by Anthony. Anthony was a ten-(10)-month-old child who was helpless against an adult and dependent upon his parents for care. Her actions in placing the sheet over his mouth and holding it there would necessarily result in an injury and was an action taken of her own volition. In addition, the expert testimony indicated that Anthony's death was caused by asphyxiation, and Durand's conduct before and after Anthony was removed from life support showed her indifference to Anthony's care. Lastly, the medical records show that prior to the events on August 10, 2006, Anthony had three visits to the doctor showing signs of asphyxiation, had been given an apnea monitor to inform Durand of when he stopped breathing that was not used, and prescribed Tegretol for seizures that was not given as prescribed.

In looking at the totality of the evidence, a rational trier of fact could conclude beyond a reasonable doubt that Durand's actions constituted the crime of second-degree murder. The jury's verdict was not plainly wrong or without evidence to support it. Therefore, this Court will not set aside the judgment and affirms the conviction.

C. <u>Sufficiency of Evidence to Corroborate Durand's Confession</u>

Finally, Durand contends that the trial court erred in finding that there was sufficient evidence on the record to corroborate Durand's "confession."[1] However, this issue was not properly raised at trial and is not properly before this Court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. The purpose of "'Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.'" <u>Neal v. Commonwealth</u>, 15 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) (quoting <u>Martin v. Commonwealth</u>, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992)).

> "The ends of justice exception is narrow and is to be used sparingly," and only when a trial court error is "clear, substantial and material." <u>Brown v. Commonwealth</u>, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." <u>Id.</u> (citing <u>Mounce v. Commonwealth</u>, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). "In examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." <u>Lewis v. Commonwealth</u>, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004), <u>rev'd on other grounds</u>, 269 Va. 209, 608 S.E.2d 907 (2005). <u>See also</u> <u>Michaels v. Commonwealth</u>, 32 Va. App. 601, 529 S.E.2d 822 (2000), <u>Redman v. Commonwealth</u>, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

<u>Tooke v. Commonwealth</u>, 47 Va. App. 759, 764-65, 627 S.E.2d 533, 536 (2006).

---

[1] At oral argument, counsel for Durand conceded that he was actually arguing that the trial court erred in admitting Durand's confession in the absence of the *corpus delecti* of the crime being established.

Durand's argument that the evidence was not sufficient to corroborate her confession is not properly before this Court because it was not raised in the trial court. Although appellant asks this Court to apply the ends of justice exception, the application of this exception is not warranted here because the record does not show "'affirmative evidence of innocence or lack of a criminal offense.'" Id. at 765, 627 S.E.2d at 536 (citing Lewis, 43 Va. App. at 134, 596 S.E.2d at 546).

For the foregoing reasons, we hold that Durand was not in custody at the time she made the incriminating statements in the audio-visual room and affirm the denial of the motion to suppress her statements. We also affirm her conviction for second-degree murder because, based on the totality of the evidence, a rational trier of fact could conclude beyond a reasonable doubt that Durand's actions constituted the crime of second-degree murder. Lastly, we find that Durand's argument that there was insufficient evidence to corroborate her "confession" was not properly preserved and, because the "ends of justice" exception is not applicable, this issue is not properly before this Court.

Affirmed.