COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and Malveaux
Argued by teleconference

SHANA CONTRELL CLEATON

v.      Record No. 0604-19-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
MAY 26, 2020

FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
W. Edward Tomko, Judge

Tessie O. Barnes Bacon (Harris, Matthews & Crowder, P.C., on
brief), for appellant.

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

On May 25, 2017, a grand jury indicted appellant Shana Contrell Cleaton ("Cleaton") in

the Circuit Court for the County of Brunswick ("circuit court") on, *inter alia*, one count of felony

hit and run with $1,000 or more in property damage, in violation of Code § 46.2-894. At a bench

trial, the Commonwealth did not present any evidence establishing the cost of the property

damage it alleged Cleaton personally caused. Cleaton was convicted of felony hit and run and

sentenced to five years' imprisonment with five years suspended.

On appeal, Cleaton argues that the trial court erred in convicting her of felony hit and run

because "there was no evidence of damage to the vehicle or personal injury, . . . Cleaton only

drove less than a mile down the road, was extracting herself from a volatile situation, [and]

stopped her vehicle and cooperated freely with the police officers that pulled in behind her."

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

In the light most favorable to the Commonwealth as the party that prevailed below, the evidence was as follows:

On the afternoon of May 3, 2017, Cleaton and her sister Mortici Thomas ("Thomas") drove their cars to Pinecrest Apartments ("Pinecrest") in Brunswick County. Their cousins (collectively, "Stith sisters"), Sakena "Shae" Stith ("Sakena"), Kendra Stith ("Kendra"), and Daneka "Cookie" Stith ("Daneka") lived at Pinecrest. Cleaton and Thomas went to confront the Stith sisters about a social media post regarding the Stith sisters' mother.

Cleaton and her three children were in her silver Mitsubishi sedan. Thomas drove her blue Honda with her daughter in the backseat. Cleaton parked her car outside one of the apartment buildings, next to Sakena's white Nissan Maxima, and Thomas parked her car on the other side of Cleaton. A two-year-old child, P.M. was in the backseat of Sakena's car.

Cleaton and Thomas got out of their cars and walked toward the Stith sisters, who were standing near Sakena's car. A "squabble" broke out amongst the two sets of sisters, and everyone was "going crazy." Sakena threw a shoe at Cleaton. At that point, Cleaton got in her car and started to reverse. As Cleaton was reversing, she ran over Sakena's toe. Sakena then ripped the windshield wiper off of Cleaton's car and smashed her hand down on Cleaton's car twice. At multiple points throughout the chaos, Kendra and another bystander tried to hold Sakena back.

Cleaton drove her car back and forth several times, in and out of the parking spot. Cleaton then drove into Sakena's car. As Cleaton reversed away from Sakena's car, Sakena opened Cleaton's driver side door and ripped the door handle off, but Cleaton "grabbed her door and closed it right back." Cleaton backed up about the length of a parking spot, and then drove forward again, nearly striking the Stith sisters. Cleaton reversed again, and Sakena ran over to

the vehicle and opened the rear driver-side door of Cleaton's car. A bookbag fell out of the back seat, and one of Cleaton's children reached out to grab the bookbag as Cleaton continued to reverse her car. Sakena pulled on Cleaton's side-view mirror but did not completely remove the mirror. Cleaton backed into a parking spot on the other side of Thomas's car and waited for a couple of seconds while the Stith sisters walked back toward their apartment building.

Cleaton then drove toward the Stith sisters, who were standing outside the apartment building, nearly hitting them with her car. Several bystanders yelled to Cleaton that there was a baby in Sakena's car. Cleaton responded, "I don't give a fuck [that] there was a baby in the car." Thomas also yelled, "F you and F the baby," saying that "they would run over anybody that was in the way." A bystander pulled P.M. out of Sakena's car. After that, Sakena pulled Cleaton's side-view mirror all the way off. One of the Stith sisters threw something at Cleaton's car as Cleaton inched her car back and forth, again nearly hitting the Stith sisters. Cleaton reversed the length of a few parking spots and rammed her car into Sakena's car. Sakena tried to open Cleaton's doors again and slammed her hand on Cleaton's car twice. Cleaton drove her car in reverse toward the exit of the apartment complex.

As Cleaton reversed, Thomas drove her car back and forth several times in the parking spots. Sakena ran toward Thomas's car and threw Cleaton's side-view mirror through Thomas's driver side window, creating a "big hole" in the window. Sakena got in her car and backed it out of the parking spot as Thomas drove her car into the group of bystanders, hopping the curb and stopping only after her car hit the apartment building. As a result, multiple bystanders were injured and taken to the hospital, including one bystander who had to be "med-flighted" to a hospital in Richmond. Thomas reversed, turned her car around, and drove toward the exit of Pinecrest as Cleaton drove her car back toward Thomas. Cleaton and Thomas then drove slowly out of the apartment complex, stopping briefly at the stop sign to check the damage to their cars.

The two women drove to Industrial Park Drive, outside of Pinecrest Apartments, where they waited for police to respond to the scene.

On March 15, 2018, and July 13, 2018, the circuit court held a bench trial. Captain Gary Peterson ("Captain Peterson"), of the Brunswick County Sheriff's Office who responded to the scene, testified that Industrial Park Drive was about seventy-five yards from the stop sign exiting Pinecrest. Captain Peterson also testified that Cleaton and Thomas travelled approximately the length of the courtroom down Industrial Park Drive, which the circuit court estimated to be "no more than about 50 feet." Lieutenant John Myrick ("Lieutenant Myrick"), who also responded to the scene, testified that Industrial Park Drive was "one street away from Pinecrest."

When asked about what property damage he noticed at the scene, Captain Peterson testified that one of the Pinecrest apartment buildings had "significant damage" and that there was damage to all three cars involved. Specifically, Captain Peterson testified that there was "significant damage on the rear-right quarter panel" of Sakena's car. The site manager at Pinecrest, Montinique Ruffin ("Ruffin"), testified that she could not recall exactly how much the repairs to the building cost, but she remembered that the repairs cost more than $1,000.

After the close of the Commonwealth's evidence, Cleaton moved to strike the charges against her. Specifically, she argued that "there was no evidence offered by the Commonwealth, whatsoever, to establish any value" of the damage to Sakena's car and "[t]here was no evidence from which the Court could conclude that value of damage exceeded $1,000 without entirely speculating or filling facts in that [do not] exist in the record." Although the circuit court denied the motion with respect to the hit and run charge, the circuit court did strike a separate destruction of property charge from a felony to a misdemeanor. The circuit court stated, "With regards to Shana Cleaton, the Court notes that that particular destruction of property dealt with the vehicle of Sakena Stith. The Court does not recall any specific monetary values with regards

to that, strikes that to a misdemeanor." At the close of all the evidence, the circuit court found Cleaton guilty of felony hit and run. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the [circuit] court is presumed to be correct and will be reversed only upon a showing that it is "plainly wrong or without evidence to support it."'" Cocke v. Commonwealth, 68 Va. App. 11, 14 (2017) (quoting Ervin v. Commonwealth, 57 Va. App. 495, 503 (2011)). While we apply a *de novo* standard of review to the circuit court's application of the law, "[w]e are bound by the [circuit] court's factual findings unless those findings are 'plainly wrong or unsupported by the evidence.'" Ward v. Commonwealth, 273 Va. 211, 218 (2007) (quoting Pyramid Dev., L.L.C. v. D&J Assocs., 262 Va. 750, 753 (2001)). "We do not determine whether we would have convicted the defendant, but whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Cocke, 68 Va. App. at 14 (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003)). "To the extent that we interpret the statute, '[t]he construction of a statute is a question of law that we review *de novo* upon appeal.'" Id. (alteration in original) (quoting Belew v. Commonwealth, 62 Va. App. 55, 62 (2013)).

### B. Hit and Run with Property Damage

Cleaton challenges the sufficiency of the evidence to establish felony hit and run because there was insufficient evidence to prove she caused $1,000 or more in property damage. The indictment read,

> Hit and run-Driver fails to rpt. $1000+ damage to property
> (Direct Indictment)
>
> On or about May 3, 2017, in the County of Brunswick, as the
> driver of a motor vehicle involved in an accident in which an
> attended vehicle or other attended property sustained more than

- 5 -

> $1,000.00 in damage, did fail to immediately stop as close to the scene of the accident as possible without obstructing traffic and provide the information required by law, in violation of §46.2-894 of the Code of Virginia (1950) as amended.

Generally, "an indictment citing a criminal statute incorporates its contents by reference." Purvy v. Commonwealth, 59 Va. App. 260, 268 (2011). However, "[w]here the indictment includes, as here, specific, narrowing language 'descriptive of the offense charged,' we cannot treat it as immaterial 'surplusage.'" Id. at 269 (quoting Commonwealth v. Nuckles, 266 Va. 519, 523 (2003)). In crafting the indictment on more narrow grounds, the Commonwealth cannot rise above the limiting language and must either prove the specific offense charged, or an offense that is a lesser-included one of that charged. Fontaine v. Commonwealth, 25 Va. App. 156, 165 (1997) (quoting Harrell v. Commonwealth, 11 Va. App. 1, 6 (1990)), overruled on other grounds by Edwards v. Commonwealth, 41 Va. App. 752, 765 (2003) (*en banc*) (overruling Fontaine "to the extent that [it] conclude[s] a conviction of an offense that is not a lesser-included offense of the indicted charge renders the judgment void, i.e., it can be raised at any time in any court").

Though there are two ways to establish culpability under Code § 46.2-894—by proving personal injury or property damage—one is not a lesser-included offense of the other. Id. at 164-65. Because the indictment charged Cleaton with violating the hit and run statute based on property damage, the Commonwealth may not rely on any injuries that may have occurred to sustain the conviction. However, misdemeanor hit and run with property damage, which requires no threshold damage value, is a lesser-included offense of felony hit and run with property damage. See Kauffmann v. Commonwealth, 8 Va. App. 400, 409 (1989) (defining a lesser-included offense as one "which is composed entirely of elements that are also elements of the greater offense").

The Commonwealth argues that the circuit court could reasonably infer from the circumstantial evidence of the "extensive damage to Cleaton's car, and the Stith car with which

- 6 -

she collided" that the total property damage exceeded $1,000. Assuming, without deciding, that the Commonwealth could rely on property damage to Cleaton's own car, the circuit court may not speculate regarding the value of damage caused because it is an element of the offense that must be proved beyond a reasonable doubt by the Commonwealth. Under the hit and run statute, the $1,000 in property damage is measured, "[w]here a motor vehicle is capable of being repaired . . . [by] the total reasonable cost of returning that vehicle to its pre-crash condition." Cocke, 68 Va. App. at 17. The record is completely devoid of any evidence regarding the cost of repairing any of the vehicles involved. The record only contains evidence of the cost of repairing the apartment building damaged by Thomas. The record thus does not support Cleaton's conviction for felony hit and run with property damage. However, the record does support a finding that Cleaton caused some unspecified amount of property damage and would therefore support a conviction for the lesser-included misdemeanor hit and run.

Apparently cognizant of its failure to establish the value of any property damage it alleged that Cleaton herself caused, the Commonwealth on appeal attempts to remedy that failure by asserting for the first time that the circuit court could have relied on the damage to the apartment building caused by Thomas. The Commonwealth contends that we should affirm Cleaton's felony conviction under the "right-result-different-reason doctrine" if we find that Cleaton and her sister acted in concert. Specifically, the Commonwealth argues:

> the two sisters traveled to the Pinecrest apartments together to confront their cousins regarding a dispute about their mother. The two co-defendants engaged in violence, both using their cars as weapons. Although it was Thomas whose car collided with the apartment building, causing over $1,000.00 worth of damage, Cleaton participated in bringing about that act. She is responsible as a co-actor in the crime for the damage to the building.

This argument is fatally flawed for two reasons.

- 7 -

First, the indictment did not allege that Cleaton committed felony hit and run as a principal in the second degree, nor did the Commonwealth otherwise place Cleaton on notice before via the indictment or otherwise that it was proceeding on the legal theory that she was a principal in the second degree to the offenses committed by Thomas. The Due Process Clauses of the Constitution of the United States and the Constitution of Virginia mandate that an accused be given proper notice of the charges against her. U.S. Const. amend. XIV; Va. Const. art. 1, § 8. Code § 19.2-220 provides that an indictment "shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date." To be legally sufficient, an indictment or other pleading must give the accused notice of the nature and character of the charged offense so she can defend against the allegations. Satcher v. Commonwealth, 244 Va. 220, 231 (1992).

Cleaton's indictment alleged that she committed felony hit and run with property damage as the driver of a vehicle. The indictment did not allege that Cleaton committed felony hit and run as a principal in the second degree by aiding and abetting Thomas, and no other pleading such as a bill of particulars was filed that would have done so.

Second, to establish that Cleaton acted as a principal in the second degree, the Commonwealth would have to prove that she was present and aided and abetted Thomas in committing the elements of felony hit and run with respect to the damage caused by Thomas to the building. However, the plain language of the statute and the specific language of the indictment require that Cleaton have acted *as a driver*. Code § 46.2-894, titled "Duty of *driver* to stop, etc., in event of accident involving injury or death or damage to attended property," provides in relevant part:

> The *driver* of any vehicle involved in an accident in which a
> person is killed or injured or in which an attended vehicle or other

- 8 -

attended property is damaged shall immediately stop as close to the scene of the accident as possible without obstructing traffic, as provided in § 46.2-888, and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, to the person struck and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with or to the custodian of other damaged property.

(Emphasis added). In the context of the hit and run statute, we have defined "driver" as "the person in actual, physical control of a vehicle." Kil v. Commonwealth, 12 Va. App. 802, 809 (1991) (quoting Webster's Third New International Dictionary 692 (3d ed. 1986)).

"A fundamental rule of statutory construction is that a penal statute 'must be strictly construed against the State and limited in application to cases falling clearly within the language of the statute.'" Smith v. Commonwealth, 8 Va. App. 109, 113 (1989) (quoting Crews v. Commonwealth, 3 Va. App. 531, 536 (1987)). "The purpose of [the hit and run statute] is to prevent motorists involved in accidents from evading civil or criminal liability by leaving the scene of an accident and to require drivers involved in an accident to provide identification information and render assistance to injured parties." Id. at 115. Under the plain language of the statute and the specific language of the indictment, the Commonwealth was required to establish that Cleaton committed the offense "as the driver of a motor vehicle." See Allen v. Commonwealth, 211 Va. 805, 808 (1971) (reversing the conviction where the evidence was insufficient to establish beyond a reasonable doubt that the defendant was the driver of the "hit and run vehicle"); Caldwell v. Commonwealth, 198 Va. 454, 460 (1956) (holding portion of the hit and run statute imposing reporting duties on a vehicle occupant or witness of an accident unconstitutionally vague); but cf. James v. Commonwealth, 178 Va. 28, 34-36 (1941) (holding that the owner of a car aided and abetted in a hit and run when he allowed an intoxicated individual to drive his car and leave the scene of an accident while he rode in the passenger seat).

At oral argument, the Commonwealth asserted that because Cleaton was a driver involved in an accident at the same scene as one caused by Thomas, the plain language of the statute could support an aiding and abetting theory. However, "[t]he law is settled that mere presence is not sufficient to establish that one is a principal in the second degree, an aider and abettor to the commission of a crime." Hall v. Commonwealth, 225 Va. 533, 536 (1983). "The prosecution must prove that the accused did or said something showing his consent to the felonious purpose and his contribution to its execution." Id. (quoting Jones v. Commonwealth, 208 Va. 370, 373 (1967)). Thus, "to establish the defendant as an aider and abettor, he must be present and shown to have procured, encouraged, countenanced or approved commission of the crime; he must share the criminal intent of the actual perpetrator or be guilty of some overt act." Id. To be "involved" in an accident within the meaning of the hit and run statute, "there must be physical contact between the driver's vehicle and another vehicle, person, or object, *or* the driver of a motor vehicle must have been a proximate cause of an accident." Robinson v. Commonwealth, 274 Va. 45, 53 (2007).

Here, however, the Commonwealth has not identified specific facts, beyond mere presence, to establish that Cleaton was aiding and abetting Thomas when Thomas drove into the apartment building. There is no evidence that Cleaton encouraged, countenanced, or otherwise approved of the commission of that crime. There is no evidence that Cleaton somehow proximately caused Thomas to drive into the building. While it is possible for one to be a principal in the second degree to a hit and run offense as was the case in James, unlike in James, Cleaton was not present in Thomas' vehicle nor is there any evidence in the record that Cleaton assisted Thomas in either damaging the building or in leaving the scene or encouraged her to do so.

Accordingly, the evidence is insufficient to establish that Cleaton caused property damage in excess of $1,000.

## C. Failure to Stop Immediately

Cleaton argues that the evidence was insufficient to prove that she did not stop as close as possible to the scene of the accident because she only travelled seventy-five yards from the accident and "was removing herself from a volatile situation at Pinecrest where people had destroyed her vehicle." The hit and run statute requires that a driver involved in certain accidents "shall immediately stop as close to the scene of the accident as possible without obstructing traffic, as provided in § 46.2-888." Code § 46.2-894. Code § 46.2-888 essentially requires that a vehicle impeding or rendering the roadway dangerous be moved unless it is an emergency, or the vehicle is inoperable. Neither the hit and run statute nor Code § 46.2-888 provide the exception Cleaton asks this Court to infer.

Moreover, "[t]he hit-and-run statute clearly requires drivers to stop as close to the accident, or point of impact, as safety will permit." Edwards, 41 Va. App. at 770. Whether or not a defendant stopped immediately as close to the scene of the accident as possible without obstructing traffic is a factual finding that will only be disturbed on appeal if it is plainly wrong or not supported by the evidence. The circuit court's implicit finding that Cleaton did not stop immediately as required by the statute is supported by the record. Cleaton exited Pinecrest apartments and traveled to Industrial Park Drive before stopping. The responding officers testified that Industrial Park Drive is about seventy-five yards from the exit of the apartment complex and that Cleaton traveled about fifty feet down Industrial Park Drive. Nothing in the record suggests that stopping on Industrial Park Drive was an immediate stop after the accident or that it was the first safe place to park the car. See id. (finding that the appellant did not stop immediately when she drove fifty to one-hundred feet from the accident and had an opportunity

- 11 -

to stop sooner). Furthermore, Cleaton briefly stopped at the stop sign exiting Pinecrest to check the damage to her car before travelling to Industrial Park Drive. Clearly, Industrial Park Drive was not the first safe place to park her car. The circuit court's factual finding is thus supported by evidence in the record.

"When an appellant successfully challenges the sufficiency of the evidence on some (but not all) aspects of his conviction, we must determine if the proven elements of the original charge qualify as a lesser-included offense." Crowder, 41 Va. App. at 666. Where the evidence establishes a lesser-included offense, and the appellant does not consent to simply be resentenced on the lesser-included offense, the appropriate remedy is to remand to the circuit court for a new trial on the lesser-included offense. Frango v. Commonwealth, 66 Va. App. 34, 46 (2016). Cleaton has not consented to resentencing, so we remand to the circuit court for a new trial on the lesser-included offense of misdemeanor hit and run in violation of Code § 46.2-894 if the Commonwealth be so advised.

### III. CONCLUSION

Finding the evidence insufficient to establish the statutory $1,000 threshold for damage to property, we reverse Cleaton's conviction for felony hit and run under Code § 46.2-894. Because the evidence sufficiently establishes every element of the lesser-included offense of misdemeanor hit and run under Code § 46.2-894, we remand this matter for retrial on that charge if the Commonwealth be so advised.

Reversed and remanded.